UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**YELLOWSTONE MOUNTAIN CLUB, LLC,**<br><br>Debtor. | Case No. **08-61570-11** |
| **MARC S KIRSCHNER, TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDATING TRUST**,<br><br>Plaintiff.<br><br>-vs-<br><br>**Desert Ranch LLLP**, **DESERT RANCH MANAGEMENT LLC**, **TIMOTHY L BLIXSETH**, **BEAU BLIXSETH**, **THORNTON BYRON LLP**, **George Mack**, **JOHN DOES 1-100**, and **XYZ CORP. 1-100**,<br><br>Defendants. | Adv No. **10-00015** |

## MEMORANDUM of DECISION

At Butte in said District this 31st day of August, 2010.

In this Adversary Proceeding, after due notice, a hearing was held April 6, 2010, in Butte on the Defendants' Motion to Dismiss the Complaint filed March 2, 2010, at docket entry no. 11, wherein the Defendants seek dismissal of this Adversary Proceeding for lack of subject matter jurisdiction (FED.R.CIV.P. 12(b)(1)), for lack of personal jurisdiction as to Desert Ranch LLLP,

Desert Ranch Management, LLC and George Mack (FED.R.CIV.P. 12(b)(2)), and for failure to state a claim upon which relief can be granted (Count I) (FED.R.CIV.P. 12(b)(6)). The Plaintiff, Marc S. Kirschner, as Trustee of the Yellowstone Club Liquidating Trust ("YCLT"), filed a Memorandum in Opposition to the Defendant's Motion to Dismiss on March 16, 2010. The Defendants filed an Amended Reply in Support of Their Motion to Dismiss on March 31, 2010. After due notice, a hearing on the Defendants' Motion to Dismiss was held April 6, 2010, in Butte. Brian A. Glasser of Charleston, West Virginia and Shane P. Coleman of Billings, Montana appeared at the hearing on behalf of YCLT, and Benjamin A. Schwartzman of Boise, Idaho appeared on behalf of the Defendants. Brent Bastian of Boise, Idaho, who has not made a formal appearance in this Adversary Proceeding, also appeared on behalf of the Defendants and Paul D. Moore of Boston, Massachusetts appeared on behalf of CrossHarbor Capital Partners, LLC and CIP Yellowstone Lending, LLC. No testimony was heard and no exhibits were offered into evidence.

FED.R.CIV.P. 12(b) is applicable to this proceeding by virtue of F.R.B.P. 7012(b).

**Subject Matter Jurisdiction**

When considering a motion to dismiss for lack of subject matter jurisdiction, the plaintiff, as the party seeking to invoke the court's jurisdiction, always bears the burden of establishing subject matter jurisdiction. *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir.2001). The court presumes a lack of subject matter jurisdiction until the plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994).

The issue in the present case is whether YCLT's claims against the Defendants are core

proceedings as defined in 28 U.S.C. § 157(b)(2). 28 U.S.C. § 1334(b) confers upon federal district courts original but not exclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 157(a) of Title 28 permits federal district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to bankruptcy courts. The United States District Court for the District of Montana has made such a reference by Standing Order 12 (Revised), dated December 9, 2009.

"Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under [28 U.S.C. § 158]." 28 U.S.C. § 157(b)(1). Congress specifically enacted § 157 in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon*, the Supreme Court held, in a plurality opinion, that a bankruptcy court did not have jurisdiction to hear a prepetition breach of contract claim that the debtor-in-possession had brought. The *Marathon* holding was based primarily on the premise that granting the bankruptcy court such jurisdiction allowed a non-article III court to adjudicate claims based on state-created private rights arising independent from and antecedent to the bankruptcy proceedings, and involving individuals that would not otherwise be party to the bankruptcy proceeding. *See Marathon*, 458 U.S. at 84, 102 S.Ct. 2858. Congress subsequently established 28 U.S.C. § 157 to try to remedy the defects in the bankruptcy system noted in *Marathon*.

Subsequent to *Marathon* and enactment of § 157, the Ninth Circuit in *Security Farms v.*

*International Brotherhood of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *In re Castlerock Properties ("Castlerock")*, 781 F.2d 159, 162 (9th Cir. 1986), explained that "[a]ctions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core'." Other Ninth Circuit authority notes that core proceedings are matters concerning administration of the estate and rights created by Title 11. *In re International Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994), *cert. denied Robertson v. Isomedix, Inc.*, 513 U.S. 1016, 115 S.Ct 577, 130 L.Ed.2d 493 (1994). Similarly, this Court has held: "'If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding . . . .' [*In re Eastport Assoc.*, 935 F.2d 1071, 1076 (9th Cir.1987)] (*quoting* [*In re Wood*, 825 F.2d 90, 97 (5th Cir.1987)])." *In re Reinertson*, 224 B.R. 137, 147-48 (Bankr. D. Mont 1998) (*quoting In re ACI-HDT Supply Co.*, 205 B.R. 231, 237 (9th Cir. BAP 1997)).

The Ninth Circuit discussed factors to be considered in determining whether a proceeding is core or non-core in *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 617 (9th Cir. 1993):

> If a claim is not listed explicitly in § 157(b)(2) as a "core proceeding[ ]," we "consider[ ] factors such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case." *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1450 n. 5 (9th Cir.1990). Determinations regarding the nature and extent of the bankruptcy estate are fundamental functions of the bankruptcy court and would be "core proceedings." *John Hancock Mutual Life Ins. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1165 (9th Cir.1990).

If an action is not core, this Court also has jurisdiction over matters that are related to a bankruptcy case. As succinctly explained in *Pacor, Inc., v. Higgins*, 743 F.2d 984, 994 (3rd Cir.

4

1984), "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate."

As between these parties, on August 16, 2010, the Court entered Judgment in favor of YCLT and against Blixseth in Adversary Proceeding 09-00014. The Judgment in Adversary Proceeding 09-00014 requires that Blixseth pay all creditors of the Debtors' bankruptcy estates, except one. While that Judgment did not exist at the time this Adversary Proceeding was commenced, that same Judgment shows that this Court has subject matter jurisdiction in this Adversary Proceeding. This Adversary Proceeding is a core proceeding arising under Title 11.

**YCLT's Standing to Pursue its Complaint**

Blixseth next claims that YCLT lacks standing to bring the instant lawsuit. As explained by this Court in the August 16, 2010, Memorandum of Decision entered in Adversary Proceeding 09-00014, a hearing under 11 U.S.C. § 1128(a) and Bankruptcy Rule 3020(b)(2) was held May 18, 2009, in Butte on approval of the Debtors' Second Amended Joint Plan of Reorganization filed April 3, 2009. Prior to the May 18, 2009, confirmation hearing, the Debtors filed a ballot report compiled by Kurtzman Carson Consultants LLC which showed that Classes 4, 6, 9, 10, 12 and 14 voted to accept Debtors' Second Amended Joint Plan of Reorganization, while classes 3, 7, 8 and 13 voted to reject Debtors' Second Amended Joint Plan of Reorganization. However, in the hours leading up to the May 18, 2009, confirmation hearing, the Debtors; Credit Suisse, Cayman Islands Branch; the Official Committee of Unsecured Creditors; New CH YMC Acquisition LLC; CIP Yellowstone Lending LLC; CrossHarbor Capital Partners LLC ("CrossHarbor"); and CrossHarbor Institutional Partners, L.P. agreed in principal to a global settlement termed

"Yellowstone Club Settlement Term Sheet" ("STS"). A signed copy of the STS was presented to the Court on May 18, 2009, but was not filed until May 22, 2009, when the Debtors filed their Third Amended Joint Plan of Reorganization.

The STS, because it was a settlement that included Credit Suisse, arguably impacted whether Class 3 and Class 8 creditors would accept or reject the Debtors' Plan. Counsel for the Debtors, the Official Committee of Unsecured Creditors, CrossHarbor and Credit Suisse thus agreed that the Debtors should have an opportunity to re-solicit the votes of Class 3 and Class 8 creditors. Moreover, while amendment of the Debtors' proposed joint plan was not required by the STS, the Court, in an effort to provide clarity to all parties going forward, directed the Debtors to amend their plan to specifically incorporate the STS.

Also at the May 18, 2009, confirmation hearing, counsel for the bankruptcy estate of Yellowstone Club World LLC ("YCW") , the Montana Department of Revenue and the Internal Revenue Service noted that their objections to confirmation were not insurmountable and in fact, counsel for YCW made the statement that YCW may withdraw its objection to confirmation. The Debtors also sought to cure the objections of various other parties and concluded that the three remaining substantive objections to confirmation were those of Sumpter, Blixseth and Desert Ranch, LLP. No appearance was made at the May 18, 2009, confirmation hearing by or on behalf of Sumpter. Thus, in an Order entered May 18, 2009, the Court summarily overruled Sumpter's objection to confirmation.

The STS was filed separately with a new Credit Agreement on May 28, 2009. Highland Capital Management, L.P., although not objecting to Debtors' Second Amended Joint Plan of Reorganization or appearing at the confirmation hearing, filed an Objection to Confirmation of the

Debtors' Third Amended Joint Plan of Reorganization and approval of the STS on May 22, 2009. Blixseth objected to Debtors' Third Amended Joint Plan on May 26, 2009, by referencing his prior objection filed May 11, 2009. In his May 11, 2009, objection, Blixseth incorporated Credit Suisse's objections to confirmation and also objected to the Debtors' Third Amended Joint Plan "on the grounds that the Chapter 11 Plan is not filed in good faith, but is a continuation of prepetition and post-petition acts of bad faith by the CEO of the Debtors-in- Possession, Edra Blixseth, in concert with others, all is more fully described in evidence previously presented or proffered to this Court in proceedings in the above captioned main bankruptcy case and in Adv. Pro. 09-00014/09-00017."

While the Court considered the record on confirmation closed at the conclusion of the May 18, 2009, confirmation hearing, the Court held an additional hearing on June 1, 2009. Following the June 1, 2009, hearing, the Court entered an Order Confirming Debtors' Proposed Plan of Reorganization on June 2, 2009. The Court also entered Findings of Fact and Conclusions of Law in connection with its approval of the Plan, wherein the Court specifically held that the Plan was proposed in good faith. Blixseth has appealed confirmation of the Debtors' Plan, again maintaining that the Debtors' bankruptcy cases and the Third Amended Joint Plan were not filed in good faith. Blixseth also filed a motion to stay the order confirming the Debtors' Plan pending the appeal. The Court denied Blixseth's motion to stay the confirmation order, specifically concluding that the Plan was filed in good faith.

Debtors' Third Amended Joint Plan provides for the disposition of the assets of the Debtors in two major components. First, the "Project" was transferred to the "Reorganized Debtors" on the "Effective Date." Second, the non-Project Assets, including "Transferred

7

Actions," were transferred by the Debtors on the Effective Date to the "Liquidation Trust" created under the terms of the Plan and organized pursuant to a Trust Agreement in substantially the form set forth in Schedule 1.85 to the Plan.

Section 8.2.2 of the Plans provides that "pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, on the Effective Date, all Transferred Actions of any kind or nature whatsoever against third parties arising before the Confirmation Date shall be transferred by the Debtors to the Liquidating Trust." The "Transferred Actions" include the claims asserted by YCLT against Blixseth in this Adversary Proceeding. The Court finds that the claims asserted by YCLT against Blixseth were assigned by virtue of the specific terms of the Plan, which was approved by the Court.

In addition to the foregoing, on July 17, 2009, Edra Blixseth, in her capacity as manager/president of BLX Group, Inc., the Manager of each of the Debtor limited liability companies, executed a certain Assignment and Assumption Agreement on behalf of the Debtors. The Assignment and Assumption Agreement includes the assignment of the Transferred Actions to YCLT. At the time Edra Blixseth executed the assignments she was in personal bankruptcy. The Court does not find this fact significant since, as stated above, the Assignment was not executed in her individual capacity. Nevertheless, out of an abundance of caution, the parties obtained a Consent and Authorization from Richard Samson, Edra Blixseth's Chapter 7 bankruptcy trustee, authorizing Edra Blixseth to "take such actions" as necessary to "complete and carry out the transactions contemplated by the [Plan]." Richard Samson confirmed his consent in testimony before the Court.

After Debtors' Third Amended Joint Plan was confirmed, Marc S. Kirschner was

appointed Trustee by the vote of the Trust Advisory Board (the "Board"). Subsequently, the Yellowstone Club Liquidating Trust Agreement was entered into and executed. Section 1.1 of the Trust Agreement states that YCLT is organized for "the purposes of holding and liquidating Trust Claims and Trust Assets." The Trustee has all the "rights, powers, and duties . . . that are necessary and proper to fulfill the purposes of the Trust" pursuant to Section 5.3.1 of the Trust Agreement. The Trustee's duties include prosecution of "all suits as may be necessary, appropriate or incident to the purposes of the Trust" as set forth in Section 5.3.2.4.

Pursuant to Debtors' confirmed Third Amended Joint Plan and the Assignment and Assumption Agreement, Kirschner, as Trustee of YCLT, succeeds to "all Causes of Action that the Debtors or their Estates could assert immediately prior to the Effective Date," except certain claims released by the Confirmed Plan of Reorganization. YCLT owns the claims asserted in this case and is the proper party to be asserting the claims herein.

Moreover, after reviewing applicable law, the Court finds that YCLT has standing to pursue the Complaint in this Adversary Proceeding. In an Order in another proceeding, this Court addressed Blixseth's standing arguments in the context of a motion for summary judgment wherein the Court noted:

> Blixseth argues that the Trust lacks standing to bring the Debtors' claims because the assignment of the claims are void as a matter of law, as tort claims are not assignable under Montana law. The Trust responds that it stands in the Debtors' shoes under Bankruptcy Code § 1123(b)(3)(B) as a representative of the estate appointed for the purpose of retention and enforcement of any claim or interest belonging to the Debtors or to the estate under the confirmed Chapter 11 Plan. The Trust cites provisions of the confirmed Plan which transferred non-Project Assets to the Trust, which under its Trust Agreement authorizes it to hold and liquidate Trust Claims, including prosecution of all suits as may be necessary.
>
> The Trust argues that, by contesting the validity of the assignment of causes of action to the Trust, Blixseth is inappropriately contesting the validity of

9

> the Plan, citing *In re Sherman*, 491 F.3d 948, 967 (9th Cir. 2007) (a timely filing of a notice of appeal typically divests a bankruptcy court of jurisdiction over those aspects of the case involved in the appeal, [but] the bankruptcy court retains jurisdiction over all other matters that it must undertake to implement or enforce the judgment or order, although it may not alter or expand upon the judgment). Based upon the authority granted the Trust under the confirmed Plan and § 1123(b)(3)(B), the Court declines to grant Blixseth summary judgment based upon state law barring assignment of tort claims.

Memorandum of Decision entered February 17, 2010, at docket entry no. 535 in Adversary Proceeding 09-00014. Under the Debtors' confirmed Third Amended Joint Plan of Reorganization including the Liquidation Trust Agreement, YCLT is the owner of the claims asserted against Blixseth in this suit. Moreover, 11 U.S.C. § 1123(b)(3)(B) specifically allows a plan of reorganization to provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose" any claim belonging to the Debtors. *See also Collins & Aikman v. Stockman*, 2010 Lexis 3818 (D.C. Del. 2010).

**Abstention on Counts II and III**

Having determined that this Court has jurisdiction over the matters asserted in YCLT's Complaint, the moving parties, consisting of Blixseth, Beau Blixseth, George Mack, Desert Ranch LLLP and Desert Ranch Management LLC request that this Court abstain under 28 U.S.C. § 1334(c)(1) and sever Count I from Counts II and III of the Complaint. In Count I of its Complaint, YCLT seeks to avoid allegedly fraudulent transfers to all defendants except Thornton Byron. In Count II, YCLT seeks avoidance of alleged fraudulent transfers to Thornton Byron and in Count III, YCLT objects to Thornton Byron's Proof of Claim No. 1382. Count IV of the Complaint seeks a preliminary injunction against all Defendants.

A civil proceeding may (a) arise under title 11, (b) arise in a case under title 11 or (c) relate to a case under title 11. Discretionary abstention is governed by 28 U.S.C. § 1334(c)(1),

and applies to all three types of civil proceedings: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." *In re General Carriers Corp.,* 258 B.R. 181, 189-190 (9th Cir. BAP 2001). "[A]bstention provisions implicate the question whether the bankruptcy court should exercise jurisdiction, not whether the court has jurisdiction in the first instance.... The act of abstaining presumes that proper jurisdiction otherwise exists." *In re General Carriers Corp.,* 258 B.R. at 190, quoting *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2nd Cir.1995); *In re Lewis*, 20 Mont. B.R. 364, 368 (Bankr. D. Mont. 2003).

>In *Lewis* this Court cited controlling authority for the following proposition on abstention:
>
>In *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999 (9th Cir.1997), however, the Ninth Circuit noted that "[a]bstention can exist only where there is a parallel proceeding in state court." *Id.* at 1009. Section §1334(c) abstention should be read *in pari materia* with 28 U.S.C. § 1452(b) remand, so that § 1334(c) applies only in those cases in which there is a related proceeding that either permits abstention in the interest of comity, section 1334(c)(1), or that, by legislative mandate, requires it, section 1334(c)(2). *Id.* at 1010; *In re Lazar*, 237 F.3d 967, 981 (9th Cir. 2001). A decision to abstain or not to abstain is not reviewable by appeal. § 1334(d); *see also, Security Farms*, 124 F.3d at 1009-10 & n. 7; *In re Lazar*, 237 F.3d at 982.

*Lewis*, 20 Mont. B.R. at 369. As discussed in *Lewis*, abstention under 28 U.S.C. § 1334(c)(1) is inapplicable here because there is no pending state court proceeding. *Schulman v. California (In re Lazar)*, 237 F.3d 967, 981-82 (9th Cir. 2001); *see also Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1009-10 (9th Cir. 1997) (abstention exists only were there is a parallel proceeding in state court). The moving Defendants do not allege any parallel state court proceeding. Accordingly, the request for abstention is denied.

### Failure to State a Claim Upon Which Relief Can Be Granted

The moving Defendants next argue that Count I of YCLT's Complaint fails to state a claim upon which relief can be granted. In addressing a Rule 12(b)(6) challenge, the Court accepts all nonconclusory factual allegations in the complaint as true (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) and *Ashcroft v. Iqbal*, 556 U.S. \_\_\_, 129 S.Ct. 1937, 1949-50 (2009)), and construes the pleading in the light most favorable to the nonmoving party. *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989). "[D]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Schneider v. California Department of Corrections*, 151 F.3d 1194, 1196 (9th Cir. 1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)). To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at \_\_\_, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570.) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Construing all nonconclusory factual allegations as true, the Court finds that Count I of YCLT's complaint has facial plausibility.

**Personal Jurisdiction**

Personal jurisdiction is the statutory or constitutional basis for a court to assert judicial authority over a party and bind him with its decision. *See* 1 James Wm Moore et al., Moore's Manual: FEDERAL PRACTICE AND PROCEDURE § 6.01[1] (2010). Personal jurisdiction falls into two categories, general personal jurisdiction and specific personal jurisdiction. General personal

jurisdiction requires that a defendant have systematic and continuous contacts with the forum such that he has a reasonable expectation to be required to defend any litigation arising in that forum. Specific personal jurisdiction exists when the litigation arises out of and relates to a defendant's contacts with the forum in connection with the activities that give rise to the litigation.

> The Ninth Circuit Court of Appeals
>
> has established a three-factor test for determining when a state may constitutionally exercise specific jurisdiction over a defendant: (1) the nonresident defendant must do some act or consummate some transaction with the forum state or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activity; and/or[1] (3) the exercise of jurisdiction must be reasonable. [*Brand v. Menlove*, 796 F.2d 1070, 1073 (9th Cir. 1986)].

*Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182 (9th Cir. 2002).

In this case, YCLT contends, and the Defendants do not dispute:

> the facts show: (1) Mack's company did all the tax work for Blixseth and his entities for sixteen years (this would include the Debtors, which are Montana entities); (2) he and his firm provided accounting services to Yellowstone Mountain Club; (3) since he left his firm at the end of 2005 he spends 70% of his time working for Blixseth and Blixseth's companies; (4) he is employed by BGI, the company that owned the Debtors; (5) since 2005 he has been paid $2 million for the work he did for Blixseth and his entities; (6) his firm prepared financial statements for the Debtors; (7) he met with Michael Snow at the Yellowstone Club for the purpose of negotiating the purchase of the B's interest in the Club; (8)

---

[1] Although Ninth Circuit law formerly required a plaintiff to demonstrate each of these three factors to establish specific jurisdiction, *see Data Disc, Inc. v. Sys. Tech. Assoc.*, 557 F.2d 1280, 1287 (9th Cir.1977), [the Ninth Circuit Court of Appeals] has, in light of subsequent Supreme Court precedent, adopted a more "flexible approach." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1074 (9th Cir.1986). Jurisdiction may be established with a lesser showing of minimum contacts "if considerations of reasonableness dictate." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir.1986); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "Under this analysis, there will be cases in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if such exercise is sufficiently reasonable." *Brand*, 796 F.2d at 1074.

he hired Moses Moore as controller of Yellowstone; (9) he is the CFO of Yellowstone Club World, which has an office in Montana and is in bankruptcy before this Court; (10) he has appeared for deposition in Missoula; (11) he was again in Missoula during the first phase of the trial in AP 14; (12) he submitted his declaration in this case pursuant to the laws of the State of Montana; and (13) Mack's former company, for which he does consulting work, filed a proof of claim in the Debtors' bankruptcy.

Similarly, Desert Ranch is the assignee of a proof of claim in the Debtors' bankruptcy. (Claim # 224-2 & Dkt. # 832). In this proof of claim, Desert Ranch claims to have a security interest in real property in Montana. Moreover, Desert Ranch filed an objection in this Court to the Debtors' proposed plan wherein Desert Ranch claims the Debtors owe it over $10,000,000, $4,000,000 of which is secured by this real property. (Dkt. # 858). The Montana Supreme Court has long held that "[j]urisdiction over the person is properly exercised when the party to be acted upon is before the court, either constructively or in fact. Jurisdiction of the defendant may be acquired by various means. It may be compelled by the action of the plaintiff, or, it may be voluntarily conferred by defendant's consent and submission to the court." *Haggerty v. Sherburne Mercantile Co.*, 186 P.2d 884, 888 (Mont. 1947). By filing the documents described above, Desert Ranch has consented to this Court's jurisdiction.

While George Mack, Desert Ranch, LLLP and Desert Ranch Management, LLC may not have purposefully directed their activities at Montana, all three have created sufficient contacts to allow the state to reasonably exercise personal jurisdiction over said Defendants. For the reasons discussed herein, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Defendants' Motion to Dismiss the Complaint filed March 2, 2010, at docket entry no. 11, is DENIED.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

14