UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**YELLOWSTONE MOUNTAIN CLUB, LLC,**<br><br>            Debtor. | Case No.  **08-61570-11** |
| **BRIAN A. GLASSER, AS SUCCESSOR TRUSTEE OF THE YELLOWSTONE CLUB LIQUIDATING TRUST**,<br><br>            Plaintiff.<br><br>-vs-<br><br>**Desert Ranch LLLP**, **DESERT RANCH MANAGEMENT LLC**, **TIMOTHY L BLIXSETH**, **BEAU BLIXSETH**, **THORNTON BYRON LLP**, **George Mack**, **JOHN DOES 1-100**, and **XYZ CORP. 1-100**,<br><br>            Defendants. | Adv No.  **10-00015** |

## MEMORANDUM of DECISION

At Butte in said District this 13th day of December, 2013.

In this Adversary Proceeding, after due notice, a hearing was held December 11, 2013, in Butte on the Plaintiff's Motion for Preliminary Injunction filed November 22, 2013, at docket

1

entry no. 201. The Plaintiff, Brian A. Glasser, Trustee of the Yellowstone Liquidating Trust, was represented at the hearing by Shane P. Coleman of Billings, Montana, and Defendants Desert Ranch LLLP, Desert Ranch Management, LLC, and Timothy L. Blixseth ("Blixseth") were represented at the hearing by Patrick T. Fox of Helena, Montana.

In the pending motion, Plaintiff requests entry of an order enjoining Blixseth, Desert Ranch, LLLP and Desert Ranch Management, LLC from transferring any of their assets in an amount or of a value that exceeds Five Thousand Dollars ($5,000.00) until the above- captioned litigation is resolved or the judgment in Adversary Proceeding No. 09-00014 ("AP-14") is fully satisfied or bonded, and for the appointment of a Trustee to monitor any such transactions contemplated by Defendants.[1] The Defendants oppose Plaintiff's motion arguing Plaintiff has filed to satisfy the "four-part conjunctive elemental analysis required under [*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008),]" and that this Court lacks the constitutional authority to grant a preliminary injunction, which Defendants characterizes as a final order.

## BACKGROUND

The Plaintiff commenced this Adversary Proceeding on February 19, 2010. In the complaint, Plaintiff seeks: (1) to set aside, as fraudulent, certain transfers by Blixseth to Desert Ranch and defendant Thornton Byron; (2) denial of the proof of claim filed by Thornton Byron; and (3) injunctive relief requiring Blixseth and Desert Ranch to maintain the status quo and

---

[1] The Court does not consider this the proper procedural vehicle to consider the appointment of a trustee. In addition, Plaintiff's counsel requested at the hearing that the Court require Blixseth to turnover the titles to a yacht and a jet. The injunction granted by this Memorandum of Decision and related Order only applies to the parties now before the Court.

preventing any further transfer or dissipation of assets. Plaintiff asserts in the complaint that Blixseth transferred the following assets to Desert Ranch:

     a. One-third ownership interest in Western Pacific Timber, LLC. The most current valuation from Blixseth's experts in AP-14 values this asset at $40 million;

     b. All ownership interest and/or the assets of Casa 18, LLC, Casa 19, LLC, and Casa 20, LLC. These three entities own stock in a Mexican company the name of which is not currently known, which in turn owns residential properties in Tamarindo, Mexico. Blixseth reported that the acquisition costs of these residential properties were approximately $2 million;

     c. 50% ownership in a 640-acre parcel of land in Bozeman, Montana referred to as "Section 5";

     d. All ownership interest in and/or the assets of the Buffalo Bill Ranch in Cody, Wyoming. The most current valuation from Blixseth's experts in AP-14 values this asset at $3.5 million;

     e. All ownership interest in and/or the assets of Western Air & Water (formerly known as Western Aviation & Marine). The most current valuation from Blixseth's experts in AP-14 values this asset at $25 million;

     f. All ownership interest in and/or the assets of Emerald Cay, Ltd, which owns a private island in the Turks & Caicos. The most current valuation available to the Trust values this asset at $35 million;

     h. All ownership interest in and/or the assets of Desert Ranch, LLC, which owns 3,000 acres of land, which were transferred into that company by Blixseth. The most current valuation from Blixseth's experts in AP-14 values this asset at $100 million;

i. A resort in Mexico known as Tamarindo. The acquisition cost of this asset was $40 million;

j. All ownership interest in and/or the assets of the following entities located in the United States: Blixseth Group of Washington, LLC; Friday Records, LLC, Hole 13 Partners, LLC, Kawish, LLC, La Paz, LLC, Little Bear Development, LLC, Lone Moose Meadows, LLC, Mexican Moon Investments, LLC, Overlook Partners, LLC, Renaissance Development, LLC, Resort Acquisition, LLC, Tamarindo, LLC, TWJ Holdings, LLC, YS Collection, LLC, Yellowstone 123, LLC, and Yellowstone L30, LLC, Cody Ranch, LLC, Blixseth Resorts, LLC and Oasis Estate L.P.;

k. All ownership interest in and/or the assets of the following entities located outside of the United States: Casa 18, S. De R. L. De C.V., Casa 19, S. De R.L. De C.V., Casa 20, S. De R.L. De C.V., La Paz Conservatory SRL, a Mexican Entity, La Paz Partners Conservancy, S.C., La Paz Development SRL, a Mexican Entity, La Paz Partners SRL, a Mexican Entity, La Paz Partners Development, S. De R.L. De C.V., Operado Tamarindo SRL, a Mexican Entity, Operindo El Tamerindo, S. De R.L. De C.V., Worldwide Commercial Properties, Ltd., a Turks and Caicos Islands Entity, Yellowstone Club World Tamarindo, S. De R.L. De C.V., and Yellowstone Holdings Mexico, S. De. R.L. De C.V.

The Plaintiff previously requested a preliminary injunction on August 24, 2010, which the Court denied on October 20, 2010. In denying the prior request for an injunction, the Court found that Plaintiff had not sustained its burden of proof and that the "Plaintiff's judgment of $40,067,962.43 is, as Blixseth's counsel stated, in perfect congruity with the stipulated injunction already in place." At that time, Defendant Timothy Blixseth ("Blixseth") argued that Plaintiff's

4

request for an injunction was excessive, improper and abusive because Blixseth had previously stipulated to an injunction in Adversary Proceeding No. 09-00064 which precluded the transfer or sale of certain property located in Mexico and commonly referred to as the Tamarindo Resort Property, which Blixseth maintained was worth $40 million.

As Blixseth correctly argued at that time, in Adversary Proceeding No. 09-00064, Blixseth stipulated to the entry of an order prohibiting Blixseth and the other defendants in that action from selling, transferring, disposing, encumbering or otherwise liquidating Blixseth's Tamarindo Resort Property. Furthermore, Blixseth agreed to entry of an order enjoining him from any actions to sell, transfer, dispose of, encumber or otherwise liquidate, or causing any entity owned or controlled by him to sell, transfer, dispose of, encumber or otherwise liquidate, the Tamarindo Resort Property without prior order of the Court.[2]

Blixseth later filed a Motion to Vacate Preliminary Injunction in Adversary Proceeding No. 09-00064 on July 27, 2010, arguing, in part, that Plaintiff could not establish a reasonable

---

[2] The parties in Adversary Proceeding 09-00064, filed on September 18, 2009, a "Stipulation for Extension of Time and for Entry of Interim Preliminary Injunction," which was approved by the Court on September 21, 2009. The aforementioned stipulation was extended by stipulations filed November 5, 2009, December 29, 2009, February 5, 2010, February 25, 2010, March 30, 2010, and May 7, 2010. In the Stipulation filed May 7, 2010:

> The parties agree that the Stipulated Order (dkt. 9) shall remain in full force and effect through judgment in this case, without prejudice to either party's right to seek modification or dissolution of this stipulated-to injunction by motion and hearing on any grounds that exist currently or may exist during the pendency of this action. This stipulation is entered into without waiver of any argument concerning whether injunctive relief is either warranted or appropriate. Pursuant to the Stipulated Order, the Defendants and others acting on behalf or in concert with them, shall not sell, transfer, dispose of, encumber, or otherwise liquidate the Tamarindo resort property described in Count III of the Complaint (the "Tamarindo Property").

5

likelihood of success on the merits. Following a hearing held May 8, 2012, the Court entered a Memorandum of Decision and Order on July 17, 2012, denying Blixseth's motion. The Court concluded at that time that the Plaintiff had shown an ability to succeed on the merits and that the balance of equities tipped in Plaintiff's favor. In the July 17, 2012, Memorandum of Decision, the Court wrote:

> Given this Court's prior rulings in Adversary Proceeding Nos. 09-14 and 10-88 and given Judge Feess' Order denying Blixseth's motion to dismiss, the Court finds Plaintiff had established an ability to succeed on the merits. Moreover, the Court concludes that preservation of the status quo is the equitable remedy at this time and the balance of equities tips in Plaintiff's favor. Therefore, Defendants' Expedited Motion to Vacate Preliminary Injunction is denied.

On July 31, 2012, Blixseth filed a notice of appeal of the Court's July 17, 2012, decision in Adversary Proceeding No. 09-00064. That appeal is still pending before the United States District Court for the District of Montana, Cause No. 2:12-cv-00053-SEH. On September 10, 2013, this Court transferred Adversary Proceeding No. 09-00064 to the District Court for trial. *See* Cause No. 2:13-cv-00068-SEH. After transferring Adversary Proceeding No. 09-00064, to the United States District Court, Blixseth admitted in a response to a motion for order to show cause filed November 13, 2013, that he sold the Tamarindo Resort Property on April 18, 2011, for approximately $13 million. Proceeds from the sale were used to pay employee severance, taxes, and account payables, along with other expenses, bills and legal defense costs. Blixseth has used all of the proceeds.

Plaintiff has also recently learned, and Blixseth does not dispute:

1. That Blixseth's (or Desert Ranch's[3]) one-third ownership interest in Western Pacific

---

[3] The Court is not sure whether the referenced assets are owned or were owned by Blixseth personally, or whether the assets were indeed transferred to Desert Ranch. For purposes

6

Timber, LLC is tied up in litigation and that Wayne Prim has seized control of Blixseth's interest in Western Pacific Timber, LLC.

    2.    Blixseth has sold the assets of Casa 18, LLC and Casa 19, LLC.

    3.    Blixseth has disposed of all ownership interest in and/or the assets of the Buffalo Bill Ranch in Cody, Wyoming.

    4.    Blixseth has sold one of the yachts owned by Western Air & Water and has transferred all his ownership interest in and/or the remaining assets of Western Air & Water to his spouse.  However, Blixseth still maintains control over Western Air & Water and is actively trying to sell the jet and yacht still owned by Western Air & Water.

    5.    Blixseth has sold all ownership interest in and/or the assets of Emerald Cay, Ltd.

    6.    Blixseth has sold the assets of or has disposed of La Paz, LLC, Little Bear Development, LLC, and Mexican Moon Investments, LLC.

    7.    Blixseth has also disposed of his condominiums in Big Sky, Montana, and also gratuitously transferred a 4-plex located in Belgrade, Montana to a former employee, Robert Sumpter.

The Plaintiff maintains that Blixseth sold the foregoing assets for a fraction of the value previously asserted by Blixseth.  Also, Blixseth maintains that he has used all of the proceeds from the sale of the foregoing assets for operating expenses.

In a Memorandum of Decision entered August 16, 2010, at docket entry no. 575, this Court found:

---

of convenience, the Court will refer to Blixseth as the owner, even though the assets may have been transferred to Desert Ranch.

Blixseth and his advisors were contemplating the financial demise of the Yellowstone Club and Edra and they were developing a plan to shield Blixseth from the fallout. Blixseth's plan involved not only obtaining releases from the Debtors, it involved the creation of Desert Ranch LLLP, a structure referred to by his attorney as a "personal Berkshire Hathaway" that provided "general creditor protection." Desert Ranch LLLP ("Desert Ranch") is a Nevada limited liability limited partnership. Blixseth owns a 98% limited partnership interest in Desert Ranch. The remaining 2% is held by the general partner of Desert Ranch, Desert Ranch Management, which is a Nevada limited liability company. Blixseth owns 40% of Desert Ranch Management and his son, Beau Blixseth, owns 30% of this entity. The remaining 30% of Desert Ranch Management is owned by two trusts. Blixseth's long-time accountant and trusted advisor, Mack, serves as Trustee of the trusts. As admitted by his own lawyer, one of the purposes of this structure is to remove assets from the reach of creditors. Virtually all of Blixseth's assets were transferred into this vehicle. Interestingly, Desert Ranch LP was converted to Desert Ranch LLLP on November 12, 2009; a mere two days after the Debtors filed bankruptcy.

The Desert Ranch structure was an integral part of Blixseth's plan to shield himself from the consequences of his breaches of fiduciary duty and fraudulent transfers in connection with the Debtors. Securing a Release was another integral part of Blixseth's plan. Indeed, in the first phase of the trial, Blixseth testified unequivocally that getting a release from any claims for breach of fiduciary duty or fraudulent transfer was the "cornerstone" of the MSA.

Interestingly, even though Blixseth transferred virtually all of his assets to Desert Ranch and even though Blixseth has disposed of a large portion of his assets, either personally or through Desert Ranch, Blixseth's counsel attempted to justify the sale of the Tamarindo Resort Property in the response filed in the United States District Court action by explaining:

While Blixseth would have preferred to sell other assets of Desert Ranch and had been attempting to do so for some time, he was unable to liquidate any other assets because nearly all other potential counter-parties were and remain unwilling to do business with Blixseth as a result of the YCLT's litigation against him and the Involuntary Bankruptcy.

DISCUSSION

Section 105(a) of Title 11 allows bankruptcy courts to "issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Under such provision, a bankruptcy court may enjoin actions against a non-debtor that "threaten the integrity of a bankrupt's estate." *In re Canter*, 299 F.3d 1150, 1155 (9th Cir. 2002). Based upon the foregoing and given the current state of the law in the Ninth Circuit, the Court is not persuaded by Blixseth's argument that this Court's lacks the constitutional authority to grant a preliminary injunction.

In order to obtain a preliminary injunction, the moving party must establish: (1) a strong likelihood of success on the merits, (2) the likelihood of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of the hardships favoring the plaintiff, and (4) that an injunction advances the public interest. *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008).

**A.    Likelihood Of Success On The Merits.**

For purposes of a preliminary injunction, a moving party must show "a strong likelihood of success on the merits." *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1096 (9th Cir. 2007). This Court previously found in AP-14 that with respect to certain transfers, "Blixseth's fraudulent intent could not be more clear" and entered judgment against Blixseth accordingly. Blixseth used the funds discussed in that proceeding to purchase assets around the world, and then admittedly transferred those assets to Desert Ranch for "general creditor protection." Based upon the arguments presented to the Court in the briefs and at oral argument, the Court finds that Plaintiff has shown a strong likelihood of success on the merits as to this cause of action.

9

**B. Likelihood Of Irreparable Injury To Plaintiff.**

A plaintiff seeking an injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 555 U.S. at 19–23. Plaintiff in this case has a judgment against Blixseth in the amount of $40,992,210.81. Blixseth previously argued that the Tamarindo Resort Property was worth $40 million. Blixseth also stipulated, in Adversary Proceeding No. 09-00064, to the entry of an order prohibiting Blixseth and the other defendants in that action from selling, transferring, disposing, encumbering or otherwise liquidating Blixseth's Tamarindo Resort Property. The Court was earlier persuaded by Blixseth that the stipulated injunction protected the Plaintiff in this action. That is no longer the case. Contrary to a specific Order of this Court, Blixseth has disposed of the Tamarindo Resort Property to the detriment of the Plaintiff. Blixseth has also admittedly disposed of numerous other asserts, all to the detriment of the Plaintiff. Plaintiff has persuasively alleged serious fraudulent activity on the part of Blixseth and Desert Ranch, amounting to substantial amounts of misappropriated money.

**C. Balance Of Hardships**

Blixseth previously argued that an injunction would frustrate his abilities to operate his businesses. As Plaintiff convincingly argues, at this juncture, Blixseth does not appear to be operating any business, other than the selling of assets. Bixseth and Desert Ranch have engaged in a pattern of secreting or dissipating assets to avoid judgment, and the likelihood of irreparable harm is strong if Blixseth and Desert Ranch continue with the further liquidation of assets. The two specific assets Plaintiff would like secured at this time are the yacht and jet owned by Western Air & Water. Plaintiff requests that Blixseth present the titles to those two assets to the Court until the matters in this Adversary Proceeding are resolved. Other than precluding a sale

of the jet and yacht, issuance of temporary injunctive relief will not substantively effect Blixseth, especially where he has failed to identify any particularized harm he would suffer by entry of the Plaintiff's requested injunction. In contrast, the Court finds that further delay in entry of a preliminary injunction will cause a hardship on the Plaintiff. The balance of equities tips in Plaintiff's favor.

**D.     Advancement Of The Public Interest**

As to the advancement of public interest, the Court finds that it is always in the public interest for parties to abide by court orders. As discussed earlier, Blixseth stipulated in Adversary Proceeding No. 09-00064 to the entry of an order prohibiting Blixseth and the other defendants in that action from selling, transferring, disposing, encumbering or otherwise liquidating Blixseth's Tamarindo Resort Property. Yet Blixseth proceeded to sell the Tamarindo Resort Property in April of 2011, and then failed to mention such sale at a hearing held May 8, 2012, on his motion to vacate preliminary injunction filed in Adversary Proceeding No. 09-00064. The Court is not persuaded by Blixseth's public interest arguments to the contrary.

For the reasons discussed above, the Court will enter a separate order providing as follows:

IT IS ORDERED the Court will enter a separate Order as follows: Plaintiff's Motion for Preliminary Injunction filed November 22, 2013, at docket entry no. 201 is granted; and Timothy L. Blixseth, Desert Ranch, LLLP and Desert Ranch Management, LLC and their agents, servants, employees, attorneys, representatives, successors and/or assigns are enjoined from spending, transferring, concealing, dissipating, disposing, assigning, hypothecating and/or encumbering any of their assets in an amount or of a value that exceeds $5,000.00 without prior Court approval

until the above- captioned litigation is resolved or the judgment in Adversary Proceeding No. 09-00014 is fully satisfied or bonded.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana